IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 05-047S |
| | : | |
| ANTHONY GOBBI | : | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR NEW TRIAL**

Comes now the United States of America, by and through its attorneys Robert Clark Corrente, United States Attorney, and James H. Leavey, Assistant United States Attorney, and opposes Defendant's Motion for New Trial for reasons stated in the accompanying Memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

James H. Leavey

JAMES H. LEAVEY
Assistant U.S. Attorney
RI Bar 1700

CERTIFICATION OF SERVICE

I hereby certify that on this 7th day of November, 2005, I served by first class mail, postage prepaid, a copy of the within Government's Opposition to Defendant's Motion for a New Trial, along with its accompanying Memorandum, to the following:

John F. Cicilline, Esquire
381 Atwells Avenue
Providence, RI 02909

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 05-047S |
| | : | |
| ANTHONY GOBBI | : | |

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL**

## INTRODUCTION

The defendant alleges that he is entitled to a new trial pursuant to Federal Rule of Criminal Procedure 33 because two of the government's witnesses lacked credibility. This argument is entirely without merit. The government submits that the evidence introduced by the government at trial, viewed in its entirety, easily supports the jury's guilty verdict.

## THE STANDARD

Federal Rule of Criminal Procedure 33 provides that upon a defendant's motion, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33. It is well settled, however, that this discretion is to be "sparingly used, and then only where there would be a 'miscarriage of justice. . . and where the evidence preponderates heavily against the verdict.'" United States v.

Indelicato, 611 F.2d 376, 387 (1st Cir. 1979) (quoting United States v. Leach, 427 F.2d 1107, 1111 (1st Cir. 1970) (internal citations omitted)). When, as here, a motion for new trial is based upon the weight of the evidence, "the court may not order a new trial 'unless it is quite clear that the jury has reached a seriously erroneous result.'" United States v. Ruiz, 105 F.3d 1492, 1501 (1st Cir. 1997) (quoting United States v. Rothrock, 806 F.2d 318, 322 (1st Cir. 1986)) (emphasis added). "A trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached a different result." Id., at 1502. See also, United States v. Pitocchelli, 830 F.2d 401, 403 (1st Cir. 1987) (judge denying defendant's motion for new trial "was not a thirteenth juror, much less was he a super-juror whose views of credibility could override the jury's verdict . . . [in denying the motion for new trial] he respected the autonomy of the jury in the field in which the jury alone can speak").

**ARGUMENT**

**THE JURY'S FINDING OF GUILT WAS REASONABLE AND AMPLY SUPPORTED BY THE EVIDENCE.**

Defendant contends that the evidence of the April 30, 2001 drug protection detail came from only two sources, i.e. Christopher Falla (Falla) and Sergeant Kevin Hawkins (Sgt. Hawkins). Defendant is ignoring substantial evidence which included the testimony of Special Agent Michael McGowan (SA

McGowan), statements made in furtherance of the conspiracy by Falla and Robert Nardolillo (Nardolillo), toll records of defendant's own telephone, and the testimony of Christopher Chapman (Chapman). The government submits that that evidence alone would be more than sufficient for a jury to reach a finding of guilt.

**A. SPECIAL AGENT McGOWAN**

SA McGowan testified to two critical meetings with Nardolillo on September 28, 2000 and January 15, 2001. In the former, a major European drug dealer was to meet with Nardolillo. In the latter, that meeting actually took place. On both occasions, the defendant was present, even though he distanced himself prior to substantive drug conversations.

SA McGowan further testified that on April 30, 2001, when he returned to Centerfolds at approximately 6:55 p.m., Nardolillo advised him that Nardolillo's associates were on their way to Centerfolds. At 7:19 p.m., Nardolillo received a telephone call, after which he told SA McGowan that his associates were outside and he had to give them final instructions (regarding the drug protection detail). Toll records indicate that that telephone call came from the defendant's telephone.

SA McGowan further testified that between 9:00 and 9:30 p.m. on the same evening, Nardolillo spoke with an individual regarding the problem at the hotel whereas Falla expected to

leave at 10:30 p.m. The evidence showed that that conversation was with the defendant, not only from the context and the statements of Nardolillo, but also because the individual with whom Nardolillo was conversing, was apparently going to meet him at Centerfolds. When Nardolillo and SA McGowan arrived, defendant was pulling into the lot in his Cadillac and, in SA McGowan's presence, Nardolillo gave the defendant the telephone number of the undercover FBI agent who was in the Marriott Hotel room.

On May 1, 2001, Nardolillo confirmed that the defendant was one of the four individuals who were working on the drug protection detail under the supervision of Nardolillo. (See Exhibit 11A.) At the time Nardolillo made that statement, he had no reason to lie to SA McGowan regarding who was involved.

As the Court is aware, defendant was also convicted of conspiracy. SA McGowan testified that on August 22, 2001, immediately prior to the second drug protection detail, when all involved in the detail were to meet, SA McGowan observed Nardolillo giving the key to the room at the Crown Plaza which contained the purported cocaine, to the defendant. SA McGowan further heard Nardolillo instruct defendant to transport Falla to the Crown Plaza and both Falla and defendant were observed traveling in that direction in Falla's vehicle. When payment for

the August 22nd detail was made later that evening, defendant was a short distance away from SA McGowan and Nardolillo.

**B. CLIFFORD FALLA**

Defendant claims that the jury "clearly, rejected all that Falla had to say ..." The government does not pretend to know how the jury judged the credibility of any witness, with the exception of the defendant, who claimed he was innocent but was found guilty. Falla's testimony was corroborated in many respects, including the testimony of Christopher Chapman and the numerous calls to the undercover room at the Marriott Hotel on April 30, 2001, which were reflected in the defendant's toll records. That same video exhibit (Exhibit 10) revealed not only that agents had observed a black Cadillac surveilling the hotel, as Sgt. Hawkins testified, but that it was being driven by the defendant. (See Exhibit 10A at 1:06 a.m.- page 19.) The fact that the jury found the defendant not guilty on Count 3 does not necessarily mean that they rejected Falla's testimony. Inconsistent verdicts do not warrant that conclusion. See United States v. Powell, 469 US 57, 65 (1984).

**C. SGT. KEVIN HAWKINS**

Defendant next claims, in effect, that Sgt. Hawkins lied and then turns the standard for granting a motion for a new trial on its head by claiming that the Court would have to find Sgt. Hawkins' testimony "so forceful that it establishes defendant's

guilt" and "heavily preponderates in favor of the verdict." Defendant refers to a report Sgt. Hawkins made to his superiors which stated that "At approximately 7:00 p.m. (check times)", Sgt. Hawkins and Special Agent Rosenberger observed three individuals, one of whom was Falla, at the Providence Marriott Hotel. The report demonstrates that it was a draft and that the detective was not certain of the time. In any case, the jury was fully apprised of this "inconsistency" and thus had all the evidence it needed to judge the credibility of Sgt. Hawkins. In defendant's memorandum, he cites Sgt. Hawkins' testimony that he observed defendant, in his Cadillac, at a Shell station between 7:00 and 8:00 p.m. There is nothing inconsistent with his testimony. According to SA McGowan and defendant's own telephone toll records, Nardolillo left Centerfolds and went outside to talk with two people involved in the drug protection detail to give final instructions at 7:19 p.m. The Marriott Hotel was only five to ten minutes away. Thus, it would appear Falla and defendant arrived at the Marriott Hotel some time between 7:30 and 7:40 p.m. Both Falla and Chapman testified that they had a discussion with the defendant and Brian King (King) regarding Chapman and King's role in escorting Falla to the hotel room. (The government is aware that Chapman testified that he did not recall if defendant was present at this meeting but he did admit that he told FBI agents two months before that defendant was

present.) Both Falla and Chapman further stated that they, along with King, went to the room together and conducted some type of surveillance to ensure that there was no danger to Falla. Thus, it would be entirely reasonable for a jury to find that Sgt. Hawkins' testimony regarding his observations of defendant in his Cadillac were accurate, albeit, closer to 8:00 then 7:00 p.m.

Next, defendant makes the same specious argument he made during his summation. He claims that an FBI report states that Falla arrived at the Marriott Hotel at 8:19 p.m. That report is a log of what transpired inside the Marriott Hotel room. Falla entered the room at 8:19 p.m. (See Exhibit 10.) The defense exhibit makes no mention whatsoever as to the time Falla arrived at the hotel; a time other evidence would suggest was between 7:30 and 7:40 p.m. and thus consistent with Sgt. Hawkins' testimony.

**D. SPECIAL AGENT ROSENBERGER**

Finally, in what can only be described as bizarre, defendant now wants to subpoena SA Rosenberger to a hearing on his motion for a new trial. SA Rosenberger is a Providence based, FBI agent and his participation in the surveillance on April 30, 2001 is listed in Sgt. Hawkins' report which defendant received pretrial. A motion for a new trial is not a second chance to present witnesses in order to convince a judge that a jury verdict was wrong. This is not "newly discovered evidence." The government

accommodated all of defendant's requests for witnesses it controlled as shown by its making SA John Mulvaney from New Hampshire available without a subpoena and advising counsel it would apply for immunity for Robert Nardolillo if defendant wished to call him. SA Rosenberger was available to be called as a witness and defendant, for obvious reasons, chose not to call him. Defendant cites no case for the proposition that he can now call witnesses whom he could have called at trial and the government knows of none. As the First Circuit has held, a defendant is not automatically entitled to an evidentiary hearing in a pretrial or post-trial motion. United States v. McAndrews, 12 F.3d 273, 279 (1st Cir. 1993). Fishing expeditions, such as the case at bar, do not mandate an evidentiary hearing. Id. at 280.

The jury heard the evidence in this case. It evaluated the witnesses' demeanor. It heard their prior consistent and inconsistent statements. It evaluated their testimony in the context of all of the evidence presented. It was their duty to determine the witnesses' credibility. They made the necessary credibility findings and returned verdicts of guilt.

## Conclusion

Given the ample evidence of defendant's guilt in this case, it simply cannot be said that that "the evidence preponderates heavily against the verdict" or that "it is quite clear that the jury reached a seriously erroneous result." The defendant's Motion for a New Trial should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

James H. Leavey

JAMES H. LEAVEY
Assistant U.S. Attorney
RI Bar 1700

CERTIFICATION OF SERVICE

I hereby certify that on this 7th day of November, 2005, I served by first class mail, postage prepaid, a copy of the within Government's Opposition to Defendant's Motion for a New Trial, along with its accompanying Memorandum, to the following:

John F. Cicilline, Esquire
381 Atwells Avenue
Providence, RI 02909